UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HUGO MORAN-DOPICO,

          Petitioner,

v.                               CASE NO. 12-10889
                               HONORABLE DENISE PAGE HOOD

WILLIE SMITH,

          Respondent.

_____/

## OPINION AND ORDER
## DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT
## GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Pending before the Court is Hugo Moran-Dopico's *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254.  The habeas petition challenges Petitioner's convictions for possession with intent to deliver a controlled substance and conspiracy to possess with intent to deliver a controlled substance.  Petitioner alleges that:  (1) the trial court violated his right to confront a witness; (2) there was insufficient evidence that he possessed the cocaine; (3) his Fourth Amendment rights were violated by the use of a conclusory felony complaint; (4) the trial court refused to hear his motions, and the prosecution withheld evidence; (5) the trial court should have suppressed evidence obtained from his illegal arrest; and (6) appellate counsel was ineffective for failing to raise claim five on direct appeal.  Respondent Willie Smith argues through counsel that none of Petitioner's claims have merit and that three of the claims are procedurally defaulted.  The Court agrees that at least one of Petitioner's claims is procedurally defaulted and that

Petitioner's other claims lack merit, are not cognizable on habeas review, or were reasonably adjudicated on the merits by the state court. Accordingly, the habeas petition will be denied.

## I.  BACKGROUND

Petitioner was tried with three co-defendants before a single jury in Macomb County Circuit Court. The charges against him arose

> from his participation with codefendants Jesus Ramon Cottleon,[1] Rigoberto Cardenas-Borbon, Antonio Perez-Chica, and others in trafficking cocaine from Phoenix, Arizona, to the Detroit area. As a result of anonymous information received, the Oakland-Macomb Interdiction Team set up surveillance at a Red Roof Inn in Roseville on April 26, 2005. In the hotel parking lot was a black Ford Explorer with an Arizona license plate. The police discovered that the Explorer was not registered to Jose Martinez, who had paid for the hotel room. During the surveillance, Detective-Sergeant Terence Mekoski observed Perez-Chica coming in and out of the room and pacing near the Explorer. Shortly thereafter, Cottleon arrived, greeted Perez-Chica and Martinez, and the men went into the room. Minutes later, Cottleon and Perez-Chica came out of room and Perez-Chica handed a set of keys to Cottleon, who got in the Explorer and quickly drove it out of the lot. Shortly thereafter, Mekoski stopped the vehicle for traffic infractions, a drug-sniffing canine alerted the police to the presence of drugs, and ten kilograms of cocaine were found in a hidden compartment. Cottleon was arrested at the scene, and Perez-Chica and Martinez were arrested at the hotel.
>
> Cottleon agreed to cooperate with the investigation and informed the police of a conspiracy involving men from Mexico delivering and selling cocaine through [Moran-Dopico], an Arizona resident with connections in the Detroit area. Cottleon testified that in March 2005, Jamie Cardenas-Borbon, a Mexican immigrant and codefendant Rigoberto Cardenas-Borbon's relative, needed clients to sell cocaine. Cottleon met [Moran-Dopico] in his Arizona apartment in March or April 2005, and [Moran-Dopico] advised Cottleon that he could traffic a large quantity of cocaine through his Detroit connections. Cottleon and [Moran-Dopico] later met with Jamie, and [Moran-Dopico] confirmed that he could distribute the cocaine.

---

[1] Cottleon was known by several aliases, including "Candelario Herrera."

On April 20, 2005, Cottleon and [Moran-Dopico] flew to Detroit to verify [Moran-Dopico's] customer base.[2] [Moran-Dopico's] friend picked up the two men from the airport and took them to a restaurant where they met [Moran-Dopico's] associates.   The next morning, a deal was arranged between Jamie, via Rigoberto's phone, [Moran-Dopico] and [Moran-Dopico's] associates involving ten kilograms of cocaine at a rate of $18,500 a kilogram to arrive within a few days.  [Moran-Dopico] remained in Detroit and Cottleon returned to Arizona on April 21, 2005.   On April 24, 2005, Cottleon and Rigoberto left Arizona en route to Michigan in a white Durango with a Mexico license plate.   Cottleon and Rigoberto were following Perez-Chica and Martinez in the Explorer that contained the cocaine.  Cottleon explained that Rigoberto used a cell phone to assure that there were no problems with the Explorer's travels.   On the morning of April 26, 2005, the Durango was stopped in St. Louis for a traffic violation, searched, and released.   At the time, the Durango was "about an hour" behind the Explorer.  After arriving in Detroit, Cottleon and Rigoberto met [Moran-Dopico] and his associates at a gas station.   Subsequently, one of [Moran-Dopico's] associates drove Rigoberto and Cottleon to the Red Roof Inn, where Cottleon took control of the Explorer.  [Moran-Dopico] remained at the gas station waiting for Cottleon to return with the cocaine.  Cottleon indicated that when he was arrested, he was en route to meet [Moran-Dopico] at the gas station and they were going to deliver the cocaine to [Moran-Dopico's] associate's house.

A DEA agent testified that as a result of information provided by Cottleon, the police requested assistance in locating the Durango, because it was likely traveling the same route to return to Arizona.  On April 28, 2005, the St. Louis police stopped the Durango.  Rigoberto was driving and [Moran-Dopico] was a passenger.  Both men were arrested.

*People v. Moran-Dopico*, No. 276455, 2008 WL 2038401, at *1-*2 (Mich. Ct. App. May 13, 2008) (footnotes in original).  This summary of the trial testimony is supported by the record and is entitled to a presumption of correctness.  28 U.S.C. § 2254(e)(1).

Petitioner, Antonio Perez-Chica, and Rigoberto Cardenas-Borbon did not testify or present any witnesses at their trial.  Petitioner's defense was that Cottleon recruited him to drive a car from Michigan to Arizona.  Counsel for Petitioner argued that Cottleon was

---

[2] Jamie gave Cottleon $1,500 to purchase the plane tickets.  Airline ticket information confirmed that the two men flew together from Arizona to Detroit.

3

a known liar who concocted a story to minimize his role in the crimes. The only defense witness was co-defendant Jose Martinez, who testified that he and Perez-Chica drove four illegal immigrants to Detroit in the black Ford Explorer on April 24, 2005. Martinez claimed that he did not know Petitioner and that he knew nothing about the cocaine hidden in the Ford Explorer, which he and Perez-Chica drove to Michigan.

On December 8, 2006, the jury acquitted Martinez, but found Petitioner, Perez-Chica, and Rigoberto Cardenas-Borbon guilty, as charged, of possession with intent to deliver 1,000 or more grams of cocaine, Mich. Comp. Laws §  333.7401(2)(a)( i ), and conspiracy to possess with intent to deliver 1,000 or more grams of cocaine, Mich. Comp. Laws § 750.157a and Mich. Comp. Laws § 333.7401(2)(a)(i).  On January 17, 2007, the trial court sentenced Petitioner to imprisonment for twelve to thirty years for the possession conviction and to a consecutive term of thirteen to thirty years for the conspiracy conviction with 628 days of credit on count one for time served.

Petitioner appealed his convictions through counsel on grounds that (1) the trial court violated his constitutional right of cross-examination by limiting the cross-examination of Cottleon and (2) there was insufficient evidence that he possessed the drugs.  In a *pro se* supplemental brief, Petitioner argued that (3) his Fourth Amendment rights were violated when a conclusory felony complaint was used to arrest and incarcerate him and (4) the trial court failed to adjudicate his motions on the merits.  The Michigan Court of Appeals rejected Petitioner's claims and affirmed his convictions in an unpublished, *per curiam* opinion.  *See Moran-Dopico*, 2008 WL 2038401.  Petitioner raised the same issues in the Michigan Supreme Court, which denied leave to appeal on September 22, 2008, because it was not persuaded to review the issues.  *See People v. Moran-Dopico*, 482 Mich. 989;

4

756 N.W.2d 63 (2008) (table).

On or about March 18, 2009, Petitioner filed a motion for relief from judgment in the state trial court. He argued that (1) the trial court violated his constitutional right to due process by failing to suppress tainted evidence and testimony obtained from his illegal arrest and (2) his appellate attorney was ineffective for not presenting his claim about the illegal arrest to the Michigan Court of Appeals on direct review. The trial court denied Petitioner's motion, and both the Michigan Court of Appeals and Michigan Supreme Court denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Moran-Dopico*, No. 300376 (Mich. Ct. App. June 9, 2011) (unpublished); *People v. Moran-Dopico*, 490 Mich. 969; 806 N.W.2d 512 (2011) (table). Finally, on February 21, 2010, Petitioner signed and dated his habeas corpus petition, and on February 28, 2012, the Clerk of this Court filed the petition.

## II. STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, __, 131 S. Ct. 770, 783, 178 L.Ed.2d 624 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

5

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523, 146 L.Ed.2d 389 (2000) (O'Connor, J., opinion of the Court for Part II).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*, 529 U.S. at 411, 120 S. Ct. at 1522.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862, 176 L.Ed.2d 678 (2010).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004)).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*, 131 S. Ct. at 786 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S. Ct. 1166, 155 L.Ed.2d 144 (2003)).  To obtain

6

a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, 131 S. Ct. at 786-87. "If a state court has not decided a particular claim on the merits, and if that claim is not procedurally defaulted, AEDPA deference does not apply, and 'this court [will] review[ ] questions of law and mixed questions of law and fact de novo.'" *Scott v. Houk*, __ F.3d __, __, No. 11-4361, 2014 WL 3702438, at *4 (6th Cir. July 28, 2014) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III.  DISCUSSION

#### A.  The Right of Confrontation

Petitioner alleges that the trial court deprived him of his right to confront the witnesses against him by limiting the defense attorneys' cross-examination of Cottleon. Defense counsel wanted to ask Cottleon whether he expected probation for his cooperation with the police.  Although the trial court informed Cottleon that he would get no less than seven years in prison in return for his guilty plea and cooperation in Petitioner's case, Cottleon had not pleaded guilty as of the date of Petitioner's trial.  Petitioner therefore contends that Cottleon could reasonably have believed he would receive probation if he continued to cooperate with the authorities on other matters.  The Michigan Court of Appeals adjudicated this claim on the merits and concluded that "[t]he trial court did not abuse its discretion by limiting the cross-examination of Cottleon to the scope of the sentencing agreement under which he testified." *Moran-Dopico*, 2008 WL 2038401, at *3.

7

### 1.  Clearly Established Federal Law

The Constitution guarantees an accused the right "to be confronted with the witnesses against him."  U.S. CONST. amend. VI.  This right includes the right of cross-examination, *Pointer v. Texas*, 380 U.S. 400, 404, 85 S. Ct. 1065, 1068, 13 L.Ed.2d 923 (1965), and more particularly, "a defendant's right to cross-examine his accusers about potential sources of bias or motives to lie."  *Batey v. Haas*, No. __ F.3d __, __, No. 13-1692, 2014 WL 3562736, at *3 (6th Cir. July 21, 2014) (citing *Davis v. Alaska*, 415 U.S. 308, 316-17, 94 S. Ct. 1105, 39 L.Ed.2d 347 (1974)).

When, as in this case, "it is merely the *extent* of cross-examination that is limited, the trial judge retains a much wider latitude of discretion . . . ."  *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989) (citing *Alford v. United States*, 282 U.S. 687, 694, 51 S. Ct. 218, 220, 75 L.Ed.2d 624 (1931)) (emphasis in original).  The test in those circumstances "is whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory."  *Id.* (citing *Stevens v. Bordenkircher*, 746 F.2d 342, 347 (6th Cir. 1984)).

To show that a judge has exceeded his or her wide latitude to impose reasonable limits on a defendant's cross-examination of an adverse witness, "the litigant must show that the exclusion of testimony was 'arbitrary or disproportionate' to its purposes. [*Michigan v. Lucas*, 500 U.S. 145, 151, 111 S.Ct. 1743, 114 L. Ed. 2d 205 (1991)] (quoting *Rock v. Arkansas*, 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)); see also *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998).  All that is required in other words is that any limitation on cross-examination be reasonable."  *Batey*, 2014 WL 3562736, at *3.

8

## 2. Application

The relevant facts in this case were carefully summarized by the Michigan Court of

Appeals as follows:

Cottleon's trial testimony was the principal evidence implicating defendant in the conspiracy. Before taking the stand, the court advised Cottleon of his right not to testify and placed on the record his plea agreement with the prosecution, which included a recommendation of a minimum sentence of seven years. Cottleon acknowledged that no other promises had been made in exchange for his testimony against defendants, and Cottleon's attorney acknowledged that the agreement as stated was accurate. Codefendant Rigoberto Cardenas-Borbon's attorney queried Cottleon regarding his understanding of his plea agreement. Cottleon initially indicated an understanding that he might still be eligible to receive probation if he continued to cooperate. The trial court then interposed and stated it would not give Cottleon probation. When questioned whether he understood that the court would not give him a sentence "less than seven years," Cottleon acknowledged that he understood that imprisonment for a period of seven years to be the minimum sentence he would receive. At this juncture, the trial court stated on the record:

The Court is making a ruling right now as far as this case is concerned that for this gentlemen's testimony he is going to get a minimum on the maximum, minimum of seven years. End of story.

The following exchange then occurred between codefendant Cardenas-Borbon's attorney and the trial court:

[Cardenas-Borbon's attorney]: I want to be able to question him as to his state of mind at the time he agreed to cooperate because he agreed to cooperate more than a year ago, and if more than a year ago he says, well, I'm going to agree to cooperate because I think I can get probation, and that turns out to be different later, it's still the motivation that provided the impetus for the cooperation.

[The trial court]: Now we are getting into speculation.

* * *

It's been over a year since the exam was held, this is November 30th, nothing has happened, and I'm saying on the

9

> record right now that from this court on this case, he will get no
> less than seven years.
>
> [Cardenas-Borbon's attorney]:  Right, your Honor, but we are
> talking about motive, motive for the testimony.
>
> [The trial court]:  No, it could have been a motive then but it is
> no longer a motive since he clearly understands that this Court
> is going to give him seven years.  I'm not going to allow it.

*Moran-Dopico*, 2008 WL 2038401, at *2-*3; *see also* Trial Tr. Vol. II, 3-16 (Nov. 29, 2006)

(discussion of the issue; the trial judge takes the matter under advisement); Trial Tr. Vol.

III, 76-88, Nov. 30, 2006) (further discussion of the issue); *id.* at 183-221 (further

discussion, questioning of Cottleon, and the trial court's ruling); Trial Tr., Vol. IV, 3-7 (Dec.

1, 2006) (Cottleon's waiver of his right to remain silent).

During Cottleon's subsequent testimony, the prosecutor asked him whether he had

an agreement with the prosecution.  Cottleon responded that he did have an agreement

with the prosecution and that the agreement was for seven years.[3]  (Trial Tr. Vol. IV, 23,

Dec. 1, 2006.)  The trial court then informed the jury that Cottleon had been charged with

two cocaine crimes and that both crimes carried the penalty of life imprisonment or any

terms of years.  The court explained that Cottleon's sentencing guidelines were a minimum

of 11.3 to 18.9 years and that the court could sentence him to either concurrent or

consecutive terms of imprisonment with a maximum sentence of thirty to forty years or

whatever the court deemed appropriate.  (*Id.* at 24-25.)

---

[3] At a later point in the trial, Cottleon once again stated that he hoped to get a
sentence of seven years.  (Trial Tr. Vol. 4, 129, Dec. 1, 2006.)  Still later, he admitted
that seven years was a substantial deal, considering the fact that he faced a minimum
of 22.6 years in prison (two consecutive terms of 11 years, three months) and a
maximum term of more than 36 years had he not cooperated with the police.  (*Id.* at
216-18.)

The trial court gave a similar instruction during its charge to the jury at the conclusion of the case. The court explained that Cottleon faced a possible penalty of life imprisonment as a result of the charges against him and that the jury could weigh Cottleon's credibility and possible bias or self interest in light of his agreement with the prosecution to serve a minimum term of seven years in prison. (Trial Tr. Vol. VIII, 11-13, Dec. 8, 2006.)

The trial court's explanation and jury instruction demonstrated how favorable Cottleon's agreement with the prosecution was. It enabled the jury to assess Cottleon's motive for testifying and his possible bias. It also enabled the jury to assess the defense theory that Cottleon was not a credible witness. And because the primary consideration was Cottleon's motive for testifying at trial, the trial court reasonably concluded that defense counsel could not question Cottleon about his initial motive for cooperating with the prosecution and whether he expected probation a year or more earlier. Petitioner has no right to habeas relief on the basis of his claim that the trial court deprived him of his right to confront Cottleon.

## B.  Sufficiency of the Evidence

Petitioner alleges next that the evidence adduced at trial was insufficient to prove beyond a reasonable doubt that he possessed the cocaine. Petitioner's attorney made a similar argument during trial when he moved for a directed verdict of acquittal. The trial court denied his motion, stating that, if the jury believed Cottleon regarding Petitioner's and Cottleon's flight from Phoenix to Detroit and the meeting they had in Detroit, there was sufficient evidence for the case to go to the jury on both counts. (Trial Tr. Vol. VI, 37-38, Dec. 6, 2006.) Following Petitioner's conviction, the Michigan Court of Appeals concluded

11

that there was sufficient evidence adduced at trial to sustain both of Petitioner's convictions.

### 1. Clearly Established Federal Law

The United States Supreme Court has held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L.Ed.2d 368 (1970).  After *Winship*, the critical inquiry on habeas review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979) (internal citation and footnote omitted) (emphases in original).  This standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Id.*, 443 U.S. at 324 n. 16, 99 S. Ct. at 2792 n.16.

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency."  *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009)).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt."  *Brown*, 567 F.3d at 205 (citing *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2781) (emphasis in original).  Second, even if the Court were "to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court]

must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphases in original).

### 2. Conspiracy to Deliver Cocaine

Petitioner has not specifically alleged that there was insufficient evidence to support his conspiracy conviction. The Court, however, understands him to be saying that neither one of his convictions was valid because the prosecutor failed to prove the essential element of possession.

A conspiracy "requires both the intent to combine with others and the intent to accomplish the illegal objective." *People v. Mass*, 464 Mich. 615, 629; 628 N.W.2d 540, 549 (2001)(citing *People v. Carter*, 415 Mich. 558, 567-568; 330 N.W.2d 314 (1982)).

> "To be convicted of conspiracy to possess with intent to deliver a controlled substance, the people must prove that (1) the defendant possessed the specific intent to deliver the statutory minimum as charged, (2) his coconspirators possessed the specific intent to deliver the statutory minimum as charged, and (3) the defendant and his coconspirators possessed the specific intent to combine to deliver the statutory minimum as charged to a third person."

*Id.*, 464 Mich. at 623-24; 628 N.W.2d at 546 (quoting *People v. Justice (After Remand)*, 454 Mich. 334, 349; 562 N.W.2d 652, 659 (1997)) (emphases omitted). There was evidence in this case that Petitioner

> and the charged coconspirators came to Michigan from Arizona. While in Arizona, through Cottleon, [Petitioner] met with Jamie Cardenas-Borbon, a Mexican immigrant who was seeking clients to traffic a large quantity of cocaine, and [Petitioner] assured him that he could distribute the cocaine in the Detroit area. At Jamie's expense, [Petitioner] and Cottleon flew from Arizona to Detroit together and met with [Petitioner's] associates to verify [Petitioner's] ability to traffic the cocaine. Airline information corroborated the testimony that [Petitioner] and Cottleon traveled from Arizona to Detroit. In Detroit, the men arranged a deal for the delivery of ten kilograms of cocaine to be delivered within a few days. [Petitioner] remained in Detroit, while Cottleon returned to Arizona. Soon thereafter, the Explorer containing the

13

cocaine left Arizona. Cottleon and Rigoberto were about an hour behind the Explorer in a Durango. Once in Detroit, Cottleon and Rigoberto met [Petitioner] and his associates. [Petitioner's] associate drove Rigoberto and Cottleon to the hotel, where Cottleon took control of the Explorer in order to deliver the cocaine to [Petitioner] and then to [Petitioner's] associates. When Cottleon was arrested, he was en route to meet [Petitioner]. Two days after the police seized the cocaine in the Explorer, the Durango was stopped heading toward Arizona. [Petitioner] was in the vehicle with Rigoberto. [Petitioner's] cell phone was seized, and records showed 14 phone calls between his phone and Cottleon's phone.

*Moran-Dopico*, 2008 WL 2038401, at *4; *see also* Trial Tr. Vol. IV, 29-40, 48-49, 90, 92, 189-92, Dec. 1, 2006) (Cottleon's testimony regarding Petitioner's involvement in the conspiracy).

A rational juror could have concluded from this evidence, taken in the light most favorable to the prosecution, that the prosecutor had proved beyond a reasonable doubt that Petitioner, Cottleon, Jamie Cardenas-Borbon, and others possessed the specific intent to work together to deliver 1,000 or more grams to third persons. As such, the state court's conclusion – that the evidence was sufficient to sustain Petitioner's conspiracy conviction – was neither contrary to, nor an unreasonable application of, *Jackson*.

### 3. Possession with Intent to Deliver Cocaine

Petitioner also claims that there was insufficient evidence to support his conviction for possession with intent to deliver cocaine. The Michigan Court of Appeals disagreed, stating that "the same evidence that enabled the jury to conclude that [Petitioner] conspired with others to possesses and deliver the cocaine also established a basis for the jury to conclude beyond a reasonable doubt that [Petitioner] possessed the cocaine." *Moran-Dopico*, 2008 WL 2038401, at *5.

To support a conviction for possession with intent to deliver 1,000 or more grams

14

of cocaine, the prosecutor must prove (1) that the recovered substance is cocaine, (2) that the cocaine is in a mixture weighing 1,000 or more grams, (3) that the defendant was not authorized to possess the substance, and (4) that the defendant knowingly possessed the cocaine with the intent to deliver it.   Mich. Comp. Laws § 333.7401(2)(a)(i); *People v. Wolfe*, 440 Mich. 508, 516-517; 489 N.W.2d 748, 752 (1992).   Petitioner does not dispute that the recovered substance was cocaine, that it weighed 1,000 or more grams, or that he was not authorized to possess the cocaine.   He argues that there was insufficient evidence to show that he actually possessed the cocaine.   He points out that the vehicle with the cocaine was stopped in Roseville, Michigan, that Cottleon was the only occupant of the vehicle, and that the cocaine did not make it to Detroit and never reached him.

> In Michigan,
>
> [a] person need not have actual physical possession of a controlled substance to be guilty of possessing it.   Possession may be either actual or constructive.   *People v. Harper*, 365 Mich. 494, 506–507, 113 N.W.2d 808 (1962), cert. den. 371 U.S. 930, 83 S.Ct. 302, 9 L.Ed.2d 237 (1962); see also *People v. Mumford*, 60 Mich. App. 279, 282–283, 230 N.W.2d 395 (1975). Likewise, possession may be found even when the defendant is not the owner of recovered narcotics.   *Id.*   See also *People v. Germaine*, 234 Mich. 623, 627, 208 N.W. 705 (1926).   Moreover, possession may be joint, with more than one person actually or constructively possessing a controlled substance.   *Id.*   See also *People v. Williams*, 188 Mich. App. 54, 57, 469 N.W.2d 4 (1991).

*Wolfe*, 440 Mich. at 519-20; 489 N.W.2d at 753.   "Possession with intent to deliver can be established by circumstantial evidence and reasonable inferences arising from that evidence . . . ."   *Id.*, 440 Mich. at 526; 489 N.W.2d at 756.   Furthermore,

> [a] person who aids or abets the commission of a crime may be convicted and punished as if he directly committed the offense. MCL 767.39; *People v. Turner*, 213 Mich. App. 558, 568; 540 N.W.2d 728 (1995).   "To support a finding that a defendant aided and abetted a crime, the prosecution must show that (1) the crime charged was committed by the defendant or

some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement." *Id.* at 568, 540 N.W.2d 728.

*People v. Izarraras-Placante*, 246 Mich. App. 490, 495-96; 633 N.W.2d 18, 22 (2001).

The testimony in this case established that, after Petitioner assured Jaime Cardenas-Borbon he could distribute ten kilos of cocaine in the Detroit area, Perez-Chica and Jose Martinez drove the Ford Explorer with the concealed cocaine in it from Arizona to a hotel in Roseville, Michigan. The testimony further established that Petitioner's associate took Cottleon to the hotel to pick up the cocaine and that Perez-Chica then handed Cottleon the keys to the Ford Explorer. Cottleon drove away in the Explorer and was on his way to meet Petitioner at a gas station when he was arrested. The jury could have inferred from this testimony that Petitioner aided and abetted others in possessing the cocaine.

The Michigan Court of Appeals reasonably concluded that "[t]here was sufficient evidence linking [Petitioner] to the cocaine found in the Explorer to sustain his conviction of possession with intent to deliver 1,000 grams of cocaine." *Moran-Dopico*, 2008 WL 2038401, at *5. Petitioner therefore has no right to habeas relief on the basis that the evidence was insufficient to support his conviction of possession with intent to deliver 1,000 or more grams of cocaine.

## C. The Felony Complaint

Petitioner asserts that the state trial court lacked subject-matter jurisdiction because the felony complaint used to arrest him was conclusory and did not establish probable cause. According to Petitioner, the felony complaint was defective because it did not

16

include a victim's name, an affidavit, or supplemental sworn testimony.  Respondent argues that this claim is procedurally defaulted.

A procedural default is "a critical failure to comply with state procedural law."  *Trest v. Cain*, 522 U.S. 87, 89, 118 S. Ct. 478, 480, 139 L.Ed. 444 (1997).  The doctrine of procedural default prohibits a federal court from reviewing the merits of a habeas petitioner's claims, including constitutional claims, if a state court declined to hear the claims because the prisoner failed to abide by a state procedural rule.  *Martinez v. Ryan*, ___ U.S. ___, ___, 132 S. Ct. 1309, 1316, 182 L.Ed. 272 (2012).

On habeas review, a prisoner may obtain relief on a procedurally defaulted claim only if he or she "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).  In this Circuit,

> "[a] habeas petitioner's claim will be deemed procedurally defaulted if each of the following four factors is met:  (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default."  [*Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011), *cert. denied*, ___ U.S. ___, 133 S. Ct. 107, 184 L.Ed.2d 49 (2012)].  To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look "to the last reasoned state court decision disposing of the claim."  *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (*en banc*).

*Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013).

### 1.  The First Three Factors of Procedural Default

In Michigan, defendants in criminal cases are required to preserve their claims for appeal by first making an objection in the trial court.  *People v. Carines*, 460 Mich. 750,

17

761-64; 597 N.W.2d 130, 137-39 (1999). Petitioner violated this rule by not raising his jurisdictional issue about the felony complaint in the trial court. The first element of procedural default is satisfied.

The second element of procedural default is enforcement of a state procedural rule. The Michigan Court of Appeals was the only state court to review Petitioner's claim in a reasoned opinion. It reviewed Petitioner's claim for "plain error affecting substantial rights" because Petitioner failed to raise his claim in the trial court. A state appellate court's review for "plain error" constitutes enforcement of a state procedural rule. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). The second element of procedural default is satisfied.

The third element of procedural default requires determining whether the state procedural rule was an adequate and independent state ground for denying review of a federal constitutional claim. "The adequacy of a state procedural bar turns on whether it is firmly established and regularly followed; a state rule is independent if the state court actually relies on it to preclude a merits review." *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005) (citing *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004)).

"[T]he procedural rule requiring objection below to preserve an issue on appeal is both firmly established and regularly followed by Michigan state courts," *Morgan v. Lafler*, 452 F. App'x 637, 647 (6th Cir. 2011), and the Michigan Court of Appeals actually relied on the rule to foreclose relief. The fact that the Court of Appeals also found the felony complaint to be sufficient under state law is not dispositive. As explained in *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L. Ed. 2d 308 (1989),

> a state court need not fear reaching the merits of a federal claim in an
> alternative holding. By its very definition, the adequate and independent
> state ground doctrine requires the federal court to honor a state holding that

18

is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. See *Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L.Ed. 158 (1935). Thus, by applying this doctrine to habeas cases, [*Wainwright v. Sykes,* 433 U.S. 72, 97 S. Ct. 2497, 53 L.Ed.2d 594 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Id.*, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10.

To summarize, Petitioner violated a relevant state procedural rule, the last state court to review his claim in a reasoned opinion enforced the rule, and the rule was an adequate and independent state ground for precluding review of Petitioner's federal claim. Federal habeas review of Petitioner's claim therefore is barred unless he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider [his] claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S. Ct. at 2565.

## 2. Cause and Prejudice; Miscarriage of Justice

Petitioner argues that there is no firmly established rule requiring him to object to the state court's lack of jurisdiction and that it was incumbent on the trial court to recognize its own lack of jurisdiction. But the rule requiring an objection below to preserve an issue for appeal applies even to jurisdictional claims. *See, e.g., People v. Toth*, No. 304226, 2010 WL 2335338, at *11 (Mich. Ct. App. June 19, 2012) (unpublished decision reviewing a defendant's claim that there was a defect in subject-matter jurisdiction for "plain error affecting substantial rights" because the defendant did not make the argument in the trial court). The Court therefore finds that Petitioner has failed to show "cause" for his procedural default. The Court need not determine whether he has established prejudice,

19

because he has failed to show "cause." *Tolliver v. Sheets*, 594 F.3d 900, 930 n.13 (6th Cir. 2010).

In the absence of "cause and prejudice," Petitioner can prevail on his procedurally defaulted claim only if he "demonstrate[s] that the failure to consider [his claim] will result in a fundamental miscarriage of justice. A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649, 91 L. Ed. 2d 397 (1986)). To be credible, however, "such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 865, 130 L. Ed. 2d 808 (1995). "A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence . . . any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 2077, 165 L. Ed. 2d 1 (2006).

Petitioner has not produced any new evidence of actual innocence, and the evidence against him, as summarized above, was substantial. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to address Petitioner's claim on the merits. His claim is procedurally defaulted and does not require an adjudication on the merits.

### D. The Trial Court and Prosecutor

The fourth habeas claim raises an issue about the trial court's handling of motions and an unrelated issue about the prosecutor's conduct.

20

### 1. The Trial Court's Alleged Refusal to Hear Motions

Petitioner alleges that the trial court refused to hear his motions, which were critical to proving his innocence. The Michigan Court of Appeals reviewed this claim, like Petitioner's previous claim, for "plain error" because Petitioner failed to raise the issue in the trial court. The Michigan Court of Appeals also conducted a careful review of the record and determined that the record did not support Petitioner's claim. The Court of Appeals pointed out that Petitioner filed five motions and that the trial court resolved all of the motions.

Petitioner asserts that his claim is not procedurally defaulted, despite the state appellate court's review of his claim for "plain error," and that the Court of Appeals mistakenly believed he did not raise the issue in the trial court. Petitioner points to his attorney's comment on the third day of trial that he (the attorney) still had not seen anything regarding Cottleon's prior convictions even though that Cottleon's record was the subject of a discovery motion in the case. (Trial Tr. Vol. III, 211, Nov. 30, 2005.)

Even if Petitioner's claim were not procedurally defaulted, it lacks merit because defense counsel did not say anything about the trial court failing to rule on his discovery motion. Rather, his comment implied that the prosecutor had failed to honor defense counsel's request and the trial court's order to provide a written summary of Cottleon's criminal record. Petitioner therefore has failed to rebut the state appellate court's factual finding that the trial court addressed all his motions. 28 U.S.C. § 2254(e)(1).

### 2. The Alleged Failure to Disclose Exculpatory Evidence

Petitioner alleges that the prosecution withheld exculpatory evidence. Petitioner relies on *Brady v. United States*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d

215 (1963), in which the Supreme Court held that a prosecutor's suppression "of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-282, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999).

The Michigan Court of Appeals rejected Petitioner's claim because (1) Petitioner did not indicate what evidence the prosecution withheld, (2) the prosecutor confirmed that he had turned over all the evidence to the defense attorneys, and (3) the evidence supposedly withheld was inculpatory evidence.   Petitioner claims in his habeas petition that the prosecution withheld evidence that he was arrested on hearsay information alone. He has not explained what he means by this.  If Petitioner is referring to what Cottleon told the police, his claim of suppressed evidence lacks merit because it was obvious throughout the trial that the prosecutor's case rested largely on Cottleon's testimony.

To the extent Petitioner is challenging the strength of the evidence against him, his claim lacks merit for the reasons given above in the discussion on the sufficiency of the evidence. *See supra*, section III.B.   And, as the Michigan Court of Appeals recognized, the basis for Petitioner's arrest was inculpatory evidence, not exculpatory evidence. Petitioner's *Brady* claim therefore lacks merit, and the state court's adjudication of the claim was neither contrary to, nor an unreasonable application of, *Brady.*

**E.  The Arrest**

22

Petitioner alleges that there was no probable cause to arrest him on drug charges and that the trial court violated his right to due process by failing to suppress evidence that arose from his illegal arrest. Petitioner raised this issue for the first time in his post-conviction motion for relief from judgment where he claimed that he was arrested for investigative purposes in violation of the Fourth Amendment. He also claimed that the trial court should have suppressed (1) a photograph that was taken of him at his arrest and later used by Cottleon to identify him, (2) the cell phone that was seized from him during his arrest, and (3) Cottleon's trial testimony.

The state postconviction court determined that Petitioner waived review of his claim by not asserting it on appeal and by not establishing "good cause" for omitting the claim on appeal. The trial court also stated that, even if the arrest in Missouri was illegal, the subsequent proceedings in Michigan were valid, and the picture, phone records, and Cottleon's testimony did not have to be suppressed.

This Court finds no merit in Petitioner's claim because Petitioner is raising a Fourth Amendment issue, and the Supreme Court has held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976) (footnote omitted). "This prohibition on federal habeas review of exclusionary rule claims applies only to prisoners who received 'the opportunity for full and fair consideration' of their claims in state court." *Good v. Berghuis*, 729 F.3d 636, 637-38 (6th Cir. 2013), *petition for cert. filed*, No. 14-6114 (U.S. Apr. 3, 2014) (quoting *Powell*, 428 U.S. 486, 96 S. Ct. at 3048). "[T]he *Powell*

23

'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Id.* at 639.

In Michigan, defendants in criminal cases may challenge the legality of searches and seizures in a motion to suppress evidence, which may be brought before or during trial. *People v. Ferguson*, 376 Mich. 90, 93-95; 135 N.W.2d 357, 358-59 (Mich. 1965). Petitioner could have raised his Fourth Amendment claim in a motion to suppress evidence either before or during trial, and he ultimately raised the issue in his motion for relief from judgment and on appeal from the trial court's decision on his motion. "That suffices to preclude review of the claim through a habeas corpus petition under *Stone v. Powell*." *Good*, 729 F.3d at 640; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012) (stating that, because the petitioner "had ample opportunities to present [his] claim[] in state court," he was precluded from obtaining habeas relief. The Court therefore declines to address the merits of Petitioner's Fourth Amendment claim.

## F.  Appellate Counsel

In his sixth and final claim, Petitioner alleges that his attorney on direct appeal was ineffective for failing to raise the issue of Petitioner's allegedly illegal arrest.  The state postconviction court held that, because Petitioner's underlying claim of error about his arrest lacked merit, his appellate attorney was not ineffective for failing to raise the claim.

Although this Court concluded above that Petitioner was barred from raising his Fourth Amendment claim on habeas review, *Stone v. Powell's* restriction on federal habeas review of Fourth Amendment claims does not "extend[] to Sixth Amendment ineffective-assistance-of-counsel claims which are founded primarily on incompetent

representation with respect to a Fourth Amendment issue." *Kimmelman v. Morrison*, 477 U.S. 365, 382-83, 106 S.Ct. 2574, 2587, 91 L. Ed. 2d 305 (1986). "[F]ederal courts may grant habeas relief in appropriate cases, regardless of the nature of the underlying attorney error." *Id.*, 477 U.S. at 383, 106 S. Ct. at 2587.

But to prevail on his claim about appellate counsel, Petitioner must show that his appellate attorney's "performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). An appellate attorney is ineffective if the attorney unreasonably failed to discover and raise nonfrivolous issues on appeal and if there is a reasonable probability that the petitioner would have prevailed on appeal if his attorney had raised the issues. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L.Ed.2d 756 (2000) (citing *Strickland*, 466 U.S. at 687-91, 694, 104 S. Ct. 2052). And, in the context of a Fourth Amendment claim, the petitioner must show that his underlying Fourth Amendment claim has merit. *Morrison*, 477 U.S. at 375, 106 S. Ct. at 2583.

Petitioner claims that his arrest was illegal because its purpose was investigation. It is true that an arrest is illegal if its purpose is mere investigation or questioning. *Brown v. Illinois*, 422 U.S. 590, 605, 95 S. Ct. 2254, 2262, 45 L.Ed.2d 416 (1975). And "[t]he general rule in a criminal proceeding is that statements and other evidence obtained as a result of an unlawful, warrantless arrest are suppressible if the link between the evidence and the unlawful conduct is not too attenuated." *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1040–41, 104 S.Ct. 3479, 3484, 82 L.Ed.2d 778 (1984) (citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). "[T]he exclusionary sanction applies to any 'fruits' of a constitutional violation—whether such evidence be tangible, physical

material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention." *United States v. Crews*, 445 U.S. 463, 470, 100 S.Ct. 1244, 1249, 63 L.Ed.2d 537 (1980) (footnotes omitted).

The record indicates that, after Cottleon's arrest and interrogation, DEA special agent James Wahle notified authorities in Missouri to be on the look out for Rigoberto Cardenas-Borbon and a white Dodge Durango traveling westbound.  On April 28 or 29, 2005, police officers in Missouri stopped the Durango.  Petitioner and Rigoberto Cardenas-Borbon were the driver and passenger in the Durango.  The vehicle was taken to a service station for a search.  Sergeant Ed Vitt of Missouri then informed DEA agent Wahle that he had detained the Durango and two individuals.  Approximately an hour later, Wahle returned the call and advised Sergeant Vitt to detain Petitioner and Cardenas-Borbon for a possible violation of immigration laws.  Wahle stated that he would subsequently "fax" a drug warrant  to Vitt.  Petitioner and Cardenas-Borbon were then searched and arrested, and Petitioner's cell phone was confiscated.  (Trial Tr. Vol. II, 102-33, Nov. 29, 2006.)  A warrant for his arrest was issued on the following day.  (Trial Tr. Vol. I, 7-8, Nov. 28, 2006.)

This summary of the facts and other portions of the record suggest that Cottleon implicated Petitioner in the drug conspiracy before Petitioner was arrested and that special agent Wahle believed in good-faith that Petitioner was an illegal alien.[4]  Therefore, the facts do not support the contention that Petitioner was arrested merely for investigative purposes.

---

[4] Wahle testified at trial that he learned for the first time during trial that Petitioner was a citizen.  (Trial Tr. Vol. VI, 14, Dec. 6, 2006.)

26

Even if the arrest were somehow illegal, an "illegal arrest or detention does not void a subsequent conviction." *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975) (citing *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), and *Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886)). Furthermore, Cottleon's testimony was not the fruit of the illegal arrest. He was arrested three days earlier and had already provided the police with information about the crimes. As for the photograph that was taken of Petitioner at his arrest and later used by Cottleon to identify Petitioner, Cottleon claimed at trial that he did not need a photograph to identify Petitioner. (Trial Tr. Vol. IV, 154, Dec. 1, 2006.) Although he apparently knew Petitioner only by his first name, he learned his actual identity through some other means. (Trial Tr. VI, 15-16, Dec. 6, 2006.) Furthermore, his testimony about Petitioner's involvement in the crimes was enough to convict Petitioner absent the photograph and phone records.

For all these reasons, appellate counsel was not ineffective for failing to argue on appeal that Petitioner's arrest was illegal. The attorney was not required to raise every non-frivolous claim on appeal, *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 3312, 77 L.Ed. 987 (1983), and he or she "cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneburger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

## IV. Conclusion

The state courts' adjudications of Petitioner's claims on the merits were not contrary to, or an unreasonable application of, Supreme Court precedent and not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87. As for

27

any issues that the state courts did not decide on the merits, the claims lack merit and do not warrant habeas relief because Petitioner has not shown that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241 (c)(3) and 2254(a). The Court therefore DENIES Petitioner's application for the writ of habeas corpus.

## V.  Regarding a Certificate of Appealability and Leave to Appeal *In Forma Pauperis*

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034, 154 L. Ed. 2d 931 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L.Ed. 542 (2000).

Reasonable jurists would not find the Court's assessment of Petitioner's constitutional claims debatable or wrong. As for the claims that are procedurally defaulted or not cognizable on habeas review, reasonable jurists would not find it debatable whether the Court's procedural rulings were correct or whether the petition states a valid claim of

28

the denial of a constitutional right.  The Court therefore declines to grant a certificate of appealability.  Petitioner nevertheless may proceed *in forma pauperis* on appeal if he chooses to appeal the Court's decision because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  October 31, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 31, 2014, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager